ELIZABETH A. FALCONE, CA Bar No. 219084
elizabeth.falcone@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500
Portland, OR 97201
Telephone: 503-552-2140
Facsimile: 503-224-4518

MATTHEW J. GAGNON, *pro hac vice*, application pending
matthew.gagnon@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
155 N. Wacker Drive
Suite 4300
Chicago, IL 60606
Telephone: 312-558-1220
Facsimile: 312-807-3619

Attorneys for Defendant
KCE CHAMPTIONS LLC

***[Additional Counsel on following page]***

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ASHANTI SMITH, individually, and on behalf of all others similarly situated, and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act ("PAGA");

Plaintiff,

v.

KCE CHAMPIONS LLC, a Delaware limited liability company, and DOES 1 through 10, inclusive,

Defendants.

Case No. ____________________

**DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446 AND 1453**

[*Filed concurrently with Civil Cover Sheet; Certification of Interested Parties and Disclosure Statement; Notice of Related Cases and Pendency of Other Cases; Declaration of Omar M. Aniff; and Supplemental Declaration of Jacob Kinde in Support of Removal*]

Complaint Filed: July 31, 2025
Trial Date: None

OMAR M. ANIFF, CA Bar No. 315446
omar.aniff@ogletree.com
HAIK KOLSUZYAN, CA Bar No. 358541
haik.kolsuzyan@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

Attorneys for Defendant
KCE CHAMPIONS LLC

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF ASHANTI SMITH AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT defendant KCE CHAMPIONS LLC ("Defendant"), by and through their undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California for the County of San Mateo to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. In support of such removal, Defendant states as follows:

## I. <u>THE STATE COURT ACTION</u>

1. On July 31, 2025, plaintiff Ashanti Smith ("Plaintiff") filed a putative Class Action Complaint ("Complaint") in the Superior Court of the State of California, County of San Mateo, entitled *Ashanti Smith v. KCE Champions LLC*, which was assigned case number 25-CIV-05830 (the "State Court Action"). The Complaint asserted claims for: (1) Failure to Pay Minimum Wages; (2) Failure To Pay Overtime Compensation; (3) Failure to Provide Meal Periods; (4) Failure to Authorize and Permit Rest Breaks; (5) Failure to Indemnify Necessary Business Expenses; (6) Failure to Timely Pay Final Wages at Termination; (7) Failure to Provide Accurate Itemized Wage Statements; and (8) Unfair Business Practices in violation of California's Business and Professions Code Section 17200, *et seq.*

2. On August 12, 2025, Plaintiff personally served the Class Action Complaint as well as other documents filed in the State Court Action on Defendant's agent for service of process. Declaration of Omar M. Aniff ("Aniff Decl.") ¶ 2. A true and correct copy of the Complaint is attached as **<u>Exhibit 1</u>** to this Notice of Removal.

3. On December 3, 2025, Plaintiff filed a First Amended Complaint (the "FAC"), adding a cause of action for civil penalties under California's Private Attorneys General Act ("PAGA"). Aniff Decl. ¶ 3. A true and correct copy of the First Amended Complaint, which is the operative Complaint, is attached as **<u>Exhibit 2</u>** to this Notice of Removal.

4. As further required by 28 U.S.C. § 1446(a), Defendant hereby provides this Court with copies of all process, pleadings, and orders received by Defendant in the State Court Action.

True and correct copies of these documents are attached as **Exhibit 3** to this Notice of Removal. Defendant has not been served with any pleadings, process, or orders besides those attached. Aniff Decl., ¶ 4.

5. Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in the FAC, and the citizenship of "Doe" defendants is disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

## II. JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

6. This action is one over which this Court has original jurisdiction under the Class Action Fairness Act ("CAFA") and is one which may be removed by Defendant pursuant to 28 U.S.C. §§ 1441 and 1453, because the number of potential class members exceeds 100, the parties are citizens of different states, and the amount in controversy exceeds the aggregate value of $5,000,000. *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).

### A. The Size of the Putative Class Exceeds 100

7. In the FAC, Plaintiff defines the proposed class as: "All persons who worked for any Defendant in California as an hourly, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice of class certification of the Class is sent." FAC ¶ 24.

8. Defendant's employment records show that there are least thirteen thousand current and former employees who fall within Plaintiff's proposed class. Specifically, from August 15, 2021, to July 19, 2025 ("Applicable Period")[1] Defendant KCE Champions LLC[2] employed at least 12,995 non-exempt hourly employees in California. Aniff Decl., ¶ 6, Ex. 5, ¶ 5.

---

[1] Although the class action is alleged to date back to July 31, 2021, Defendant relies on a shorter period starting on August 15, 2021. Defendant reserves its right to expand the relevant period through July 31, 2021, as alleged by the FAC. Defendant further reserves the right to supplement this Notice of Removal to include estimates of the additional amounts in controversy based on the other allegations contained in the FAC.

[2] Defendant KCE Champions LLC was erroneously sued as it was not Plaintiff's nor any of the putative class members she seeks to represent in this action's employer. Supplemental Declaration of Jacob Kinde, ¶ 2. Rather, Plaintiff and the putative class members were employed by KinderCare Education LLC at all relevant times. *Id.*, ¶ 3.

**B. The Parties Are Diverse**

9. Citizenship of Defendant. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *Id.* The United States Supreme Court established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction in *The Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). The Supreme Court concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 1184. The Court further clarified that the principal place of business is the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination." *Id.*

10. At all times on or after the date this action was filed, Defendant has been a citizen of the states of Delaware and Oregon. Defendant has its principal place of business in Oregon, as that is the location of its headquarters and where it centrally manages their executive and administrative operations. Aniff Decl., ¶ 7, Ex. 6 ¶ 5. In addition, Defendant was formed in the State of Delaware. Aniff Decl., ¶ 7, Ex. 6, ¶ 3. Defendant was neither formed in California, nor does it have its principal place of business in California. Aniff Decl., ¶ 7, Ex. 6, ¶¶ 3, 5. Accordingly, for purposes of determining diversity, Defendant is regarded as a citizen of Oregon and Delaware, and not as a citizen of California.[3]

11. Citizenship of Plaintiff and putative class members. Plaintiff is a citizen of the State of California.

12. Members of the proposed class, who by definition are or were employed in California, are presumed to be primarily citizens of the State of California. FAC ¶ 24; *see, e.g., Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" is an important factor weighing in favor of citizenship).

13. Accordingly, the minimal diversity of citizenship requirements under 28 U.S.C.

[3] The citizenship of fictitiously named "Doe" defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

§ 1332(d)(2) are met because Defendant is a citizen of Oregon and Delaware while Plaintiff, a putative class member, is a citizen of California.

**C. The Amount in Controversy Exceeds an Aggregate of $5,000,000**

14. To remove a class action under CAFA, the amount in controversy must exceed $5,000,000." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing defendant must "produce underlying facts showing only that it is *more likely than not* that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

15. In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements," adding "the potential claims of the absent class members" and attorneys' fees. *Rodriguez, supra*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 185 L.Ed. 2d 439 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, C-13-0939 EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz, supra*, 2007 WL 1302504, at *3.

16. While Defendant denies the validity of Plaintiff's claims and requests for relief and does not concede in any way that the allegations in the FAC are accurate, that Plaintiff's claims are amenable to class-wide treatment, or that Plaintiff or any of the putative class members are entitled to any of the requested relief, the allegations in the FAC show it is more likely than not that the amount in controversy exceeds the jurisdictional minimum. *See Guglielmino, supra*, 506 F.3d at 700.

17. As described further below, as well as in the concurrently filed declaration from a

third-party data analyst,[4] the amount in controversy exceeds the jurisdictional minimum of $5,000,000. If necessary, Defendant could and would supplement this Notice of Removal to include estimates of the additional amounts in controversy based on the other allegations contained in the FAC and pertaining to the longer relevant period.

**1. <u>Defendant's Calculation of the Amount in Controversy</u>**

18. Defendant denies all of Plaintiff's allegations and does not waive any arguments or concede the legitimacy of any factual or legal contentions by virtue of this Removal. Regardless, for purposes of removal, in evaluating the amount in controversy the Parties must assume all of Plaintiff's allegations are true and legally supported. *Green v. Harley-Davidson, Inc.*, 965 F.3d 767 (9th Cir. 2020).

19. In determining the amount in controversy to support their Notice of Removal, Defendant relies on both employment data and conservative violation rates supported by the facts alleged by Plaintiff in her FAC relating to alleged claims for failure to provide meal periods or premium payments in lieu thereof and failure to timely pay wages upon separation of employment. *See* FAC, ¶¶ 5(b), 5(e), 15, 17, 20, 52-53, 64-68; Prayer For Relief ¶¶ 16-19, 31-34; *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (holding that when an award of attorneys' fees is authorized by statute, the request for attorneys' fees is properly considered in determining the amount in controversy for removal purposes.).

---

[4] For purposes of effecting removal pursuant to 28 U.S.C. § 1332(d), declarations from defendant and their counsel constitute sufficient evidence to establish the amount in controversy. *See, e.g., Muniz, supra*, 2007 WL 1302504, at *2, *5 (relying on the evidence submitted by the defendant in the form of a declaration from its employee relations manager, which "set forth the underlying facts needed to calculate the amount in controversy," and a declaration from its counsel, which calculated the amount in controversy based on the underlying facts and in light of the laws governing the plaintiff's claims, and finding that the defendant had shown that "it is more likely than not that the jurisdictional threshold of $5,000,000.00 is met"); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *4 (N. D. Cal. Mar. 1, 2012) (finding there was "adequate foundation" for the declaration submitted by the defendant's human resources director regarding "the numbers of employees, payperiods *[sic]* and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in controversy in excess of CAFA's jurisdictional threshold).

**a. The Amount Placed in Controversy By Plaintiff's Meal Period Claim Exceeds $6,141,005.**

20. In her Third Cause of Action, Plaintiff alleges that "Defendants regularly failed to provide Plaintiff and the Class with both meal periods as required by California law." FAC, ¶ 52.

21. Plaintiff further alleges that"[b]y [Defendant's] failure to permit and authorize Plaintiff and the Class to take all meal periods as alleged above (or due to the fact that Defendants made it impossible or impracticable to take these uninterrupted meal periods), Defendants willfully violated the provisions of Section 226.7 of the California Labor Code and applicable Wage Orders." *Id.*

22. Plaintiff alleges that, "Defendant's policy and practice was to not provide meal periods to Plaintiff, the Class, and the Aggrieved Employees in compliance with California law." *Id.* at ¶ 17.

23. Plaintiff further alleges that, "Defendants often required Plaintiff, the Class, and the Aggrieved Employees to work in excess of five consecutive hours a day without providing 30-minute, continuous and uninterrupted, duty-free meal period for every five hours of work, or without compensating Plaintiff, the Class, and the Aggrieved Employees for meal periods that were not provided by the end of the fifth hour of work or tenth hour of work." *Id.* at ¶ 17.

24. Plaintiff further alleges that, "Plaintiff, the Class, and the Aggrieved Employees were often required to work during their meal periods, leading to the failure to provide uninterrupted meal periods." *Id.*

25. Plaintiff further alleges that, "Plaintiff, the Class, and the Aggrieved Employees were required to wear their company radios at all times, including during meal periods, and were required to respond to work requests from supervisors while clocked out during purported meal periods." *Id.*

26. Plaintiff further alleges that, "Plaintiff, the Class, and the Aggrieved Employees were not provided with uninterrupted and complete meal periods, and were regularly required to work through their meal periods." *Id.*

27. Under California law, employees who are denied compliant meal periods are entitled to one hour of premium pay for each day that a meal period is missed. *See Marlo v. United Parcel*

*Serv., Inc.*, No. CV 03-04336 DDP (RZx), 2009 WL 1258491, at *7 (C.D. Cal. May 5, 2009).

28. To that end, Plaintiff alleges that "Plaintiff and the Class are entitled to be paid one hour of additional wages at the regular rate of pay for each workday he or she was not provided with all required meal period(s), plus interest thereon." *Id.* at ¶ 53.

29. Although Plaintiff "was free to propose [a violation] rate," Plaintiff has not provided any allegations that could be read to reasonably constrain the potential violation rates for purposes of determining the amount placed in controversy for removal purposes. *See Perez v. Rose Hills Co.*, 131 F.4th 804, 810 (9th Cir. 2025) (approving violation rate of one hour of unpaid straight time, one hour of overtime pay, one hour of meal period premiums, and one hour of rest period premiums per workweek per putative class employee where plaintiff used "at times" language in the Complaint). Thus, Defendant may rely on reasonable assumed violation rates consistent with the FAC. *Id.*

30. When determining the amount placed in controversy by Plaintiff's allegations that Defendant had a "policy and practice" and "regularly" failed to provide meal periods, and "often" required employees to work during meal periods, a 20% violation rate is reasonable. *See e.g.*, *Casanares v. FreshRealm, Inc.*, Case No. 4:25-cv-04249-KAW, 2025 WL 2701880 at *3 (N.D. Cal. Sep. 23, 2025) (finding a 40% violation rate for meal periods "reasonable" when Plaintiff alleges "'Defendant had a pattern, practice, and policy of not providing compliant meal periods'"); *Lamar v. Wyndham Vacation Resorts, Inc.*, Case No. 25-cv-04191-JST, 2025 WL 1823114 at *3 (N.D. Cal. July 2, 2025) (collecting Northern District cases approving a 20% violation rate where a "pattern and practice" alleged for meal period violations); *Nisbet v. Southern Tire Mart, LLC*, Case No. 5:24-cv-07653-PCP, 2025 WL 1135091 at *4 (N.D. Cal. Apr. 16, 2025) (finding a 20% violation rate "based on the use of 'often' in the complaint" to be reasonable); *see Gallagher-Stevens v. Independent Living Systems, LLC*, Case No. 24-cv-04582-WHO, 2025 WL 354630 at *5 (N.D. Cal. Jan. 31, 2025) (collecting cases approving a 20% violation rate for meal premiums based on "pattern and practice" allegations); *Figueroa v. Multi-Color Corp.*, Case No. 24-cv-02208-DMR, 2024 WL 3101013 at *4 (N.D. Cal. June 24, 2024) (concluding that a 20% violation rate was reasonable when the complaint alleged the employees "'were regularly denied legally compliant' meal periods").

31. Based on a review of Defendant's business records, during the Applicable Period, the

putative class members worked an aggregate of 2,606,539 shifts that exceeded six hours in length[5] and received a minimum hourly rate of at least $11.78.[6] Aniff Decl., ¶ 6, Ex. 5, ¶¶ 7,8.

32. Based on analysis using a conservative 20% violation rate, Defendant's calculation of Plaintiff's claim for failure to provide legally compliant meal periods puts **at least <u>$6,141,005.88</u> <u>in controversy</u>**. The computation of the amount in controversy is based on conservative calculations that during the Applicable Period, putative class members worked 2,606,539 shifts that exceeded six hours in length, that there was a 20% meal period violation rate, and conservatively each putative class member earned the minimum regular rate of $11.78 per hour. Aniff Decl., ¶ 6, Ex. 5, ¶¶ 7,8.

33. Consequently, the amount placed in controversy by the Meal Period Claim is **<u>$6,141,005.88</u>** ($11.78 x 2,606,539 shifts x 0.2).

### b. The Amount Placed in Controversy By Plaintiff's Section 203 Claim Exceeds $3,506,025.60.

34. Plaintiff's Sixth Cause of Action for "Waiting Time Penalties" alleges that, "Defendants failed, and continue to fail to pay terminated Class Members, without abatement, all wages required to be paid by California Labor Code sections 201 and 202 either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ." FAC, ¶ 64.

35. Plaintiff further claims that "Defendants willfully failed and refused to timely pay Plaintiff, the Class, and the Aggrieved Employees at the conclusion of their employment all wages for all minimum wages, overtime wages, meal period premium wages, and rest period premium wages." FAC, ¶ 20.

---

[5] "An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee." Labor Code § 512(a). For purposes of this removal, Defendant conservatively estimated that mutual waivers were in place for all putative class members during the Applicable Period, and thus considered only at shifts exceeding six hours. Defendant reserves the right to expand the amount in controversy to include meal period violations for shifts exceeding five hours in length as supported by the evidence in opposition to any remand motion.

[6] Putative class members' average rate of pay during the Applicable Period was $20.80. Aniff Decl., ¶ 6, Ex. 5, ¶ 6. For purposes of these calculations, however, Defendant has conservatively used the <u>lowest</u> minimum wage rate of $11.78 across the board. *See id.* at ¶ 7. Defendant reserves the right to use higher hourly rates as supported by the evidence in opposition to any remand motion.

36. Plaintiff further claims that "Plaintiff and the Class are entitled to recover from Defendants their additionally accruing wages for each day they were not paid, at their regular hourly rate of pay, up to 30 days maximum pursuant to California Labor Code § 203." *Id.* ¶ 67.

37. Under Labor Code section 203, "[i]f an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid . . . but the wages shall not continue for more than 30 days." Lab. Code § 203(a). A three-year statutory period applies to Plaintiff's claim for waiting time penalties. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1398 (2010).

38. Here, Plaintiff alleges that she and putative class members suffered Labor Code violations for alleged unpaid minimum wages, straight time, and overtime wages, non-compliant meal periods and failure to pay meal period premiums in lieu thereof, and failure to authorize and permit rest periods and failure to pay rest period premiums in lieu thereof. FAC, ¶¶ 15-19, 31-57. Specifically, Plaintiff alleges that (a) "[a]t all relevant times herein mentioned, Defendants knowingly failed to pay Plaintiff and the Class compensation for all hours they worked" (FAC ¶ 33); (b) "[a]t all times relevant hereto, Defendants failed to pay Plaintiff and the Class overtime compensation for the hours they have worked in excess of the maximum hours permissible by law as required by California Labor Code § 510 and 1198. Plaintiff and the Class are regularly required to work overtime hours" (FAC ¶ 45); (c) "Defendants regularly failed to provide Plaintiff and the Class with both meal periods as required by California law" which resulted in "Plaintiff and the Class [being] entitled to be paid one hour of additional wages at the regular rate of pay for each workday he or she was not provided with all required meal period(s), plus interest thereon" (FAC ¶¶ 52, 53); and (d) "Defendants failed to authorize Plaintiff and the Class to take rest breaks, regardless of whether employees worked more than 4 hours in a workday" which resulted in "Plaintiff and the Class [being] entitled to be paid one hour of additional wages at the regular rate of pay for each workday he or she was not provided with all required rest break(s), plus interest thereon." (FAC ¶¶ 56, 57). Plaintiff does not allege that these claims solely affected any subclass, or that these claims were limited to any particular sub-group of putative class members. *See generally* FAC.

39. As such, it is reasonable to conclude that all former employees were terminated while

being owed at least *some* amount of money – which, in turn, would trigger Plaintiff's claim for 30-days of continued wages for every former employee at their daily wage rates. *See e.g.*, *Gonzalez v. Peak Cal. Rest. Grp. LLC*, Case No. 3:25-cv-04068-AMO, 2025 WL 2934518 at *4 (N.D. Cal. Oct. 15, 2025) (finding 100% violation rate for waiting time penalties to be reasonable when the "claims arise from broadly alleged wage violations, including unpaid overtime and missed meal and rest breaks"); *Nguyen v. SMTC Mfg. Corp.*, Case No. 24-cv-07394-JST, 2025 WL 2238033 at *6 (N.D. Cal. Aug. 6, 2025) (finding a 100% violation rate to be reasonable "'as there is nothing in the complaint or the record to suggest that . . . Defendants paid employees these unpaid wages . . . at some point during the month after they separated from employment'"); *Franklin v. Home Depot U.S.A., Inc.*, Case No. 5:25-cv-03657-BLF, 2025 WL 1983036 at *4 (N.D. Cal. July 17, 2025) (finding a 100% violation rate to be reasonable for waiting time penalties); *Petersen v. Gold Bond Bldg. Prods., LLC*, Case No. 24-cv-00617-TSH, 2024 WL 3859801 at *6 (N.D. Cal. Aug. 16, 2024) (approving a 100% violation rate where "allegations of Plaintiff's complaint [] indicate that at least some wages were never paid to all employees"); *Salonga v. Aegis Senior Communities, LLC*, Case No. 22-cv-00525-LB, 2022 WL 1439914 at *4 (N.D. Cal. May 6, 2022) (approving a 100% violation rate where the plaintiff tied waiting-time penalties to other claims for unpaid wages and premiums and the defendant specifically accounted for only terminated employees; collecting cases approving the same).

40. Based on a review of Defendant's business records, during the three-year relevant liability period from August 15, 2022, through July 19, 2025, 6,324 putative class members separated from employment. Aniff Decl., ¶ 6, Ex. 5, ¶ 10. During the 30 days preceding these putative class members' separation of employment, their shifts averaged 6.47 hours in length, and they received a minimum hourly rate of at least $15.40. Aniff Decl., ¶ 6, Ex. 5, ¶¶ 11-12.

41. Based on a conservative analysis using a 20% violation rate, Defendant's calculation of Plaintiff's claim for waiting time penalties is **at least <u>$3,506,025.60</u>**. The computation of the amount in controversy is based on conservative calculations that during the alleged three-year liability period, 6,324 putative class members separated from employment, they only worked 6 hours per day on average, earned a minimum of $15.40 an hour, and who suffered a 20% violation rate

multiplied by 30 days Aniff Decl., ¶ 6, Ex. 5, ¶¶ 10-12.

42. Consequently, the amount placed in controversy by the Waiting Time Penalty Claim is at least **$3,506,025.60** (6,324 separated employees x 6 shift length x $15.40 lowest rate of pay x 0.2 violation rate x 30 days of pay).

**2. The Amount Placed In Controversy By Attorneys' Fees Exceeds $2,411,757.87**

43. Based on the foregoing, Defendant has demonstrated that the aggregate amount of just two of Plaintiff's claims puts an amount in controversy that exceeds **$9,647,031.48**.

44. Plaintiff also seeks to recover attorneys' fees in connection with the above claims. FAC ¶¶ 68; Prayer for Relief ¶¶ 18, 33. In the Ninth Circuit, 25% of the total recovery is the "benchmark level" for reasonable attorney fees in class action cases. *Rombaut v. U.S. Concepts LLC*, No. 2:25-CV-02802-AB (EX), 2025 WL 2044670, at *8-9. (C.D. Cal. July 18, 2025) (collecting cases); *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013). Using this 25% benchmark, courts have included attorney fees for 25% of the total recovery in determining the amount in controversy under CAFA. *Rombaut v. U.S. Concepts LLC*, No. 2:25-CV-02802-AB (EX), 2025 WL 2044670, at *8-9. (C.D. Cal. July 18, 2025) (contemplating inclusion of 25% of total recovery in attorney fees under CAFA); *Rwomwijhu v. SMX, LLC*, No. CV160105ABPJWX, 2017 WL 1243131, at *6 (C.D. Cal. Mar. 3, 2017) (including fees in calculation, noting that "courts in the Ninth Circuit, including this one, have allowed an estimated fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA"); *Sanchez v. Russell Sigler, Inc.*, No. CV-1501350ABPLAX, 2015 WL 12765359, at *7 (C.D. Cal. Apr. 28, 2015) (same). "[W]hen a statute or contract provides for the recovery of attorney fees, prospective attorney fees must be included in the assessment of the amount in controversy." *Arias v. Residence Inn by Marriott, supra*, 936 F.3d at 922 (citing *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 889 F.3d 785, 794 (9th Cir. 2018)).

45. Assuming an award of attorney fees in the benchmark amount of 25% of the total recovery, **the amount in controversy for such fees is $2,411,757.87** [$9,647,031.48 x .25].

**3. Summary of Defendant's Calculations**

46. As described above, a reasonable and conservative estimate of the amount in

controversy presented by just two of Plaintiff's claims for unpaid meal period premiums and waiting time penalties and associated attorney's fees far exceeds $5,000,000. Indeed, these claims have placed at least **$12,058,789.35** in controversy, as follows:

| **Claim** | **Estimated Exposure** |
|---|---|
| Meal Period Premiums | $6,141,005.88 |
| Waiting Time Penalties | $3,506,025.60 |
| **Subtotal** | **$9,647,031.48** |
| Attorneys' Fees | $2,411,757.87 |
| **Total Amount In Controversy** | **$12,058,789.35** |

Consequently, the amount placed in controversy by Plaintiff's claims exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

### 4. Additional Claims Further Increase The Amount

47. For purposes of this removal, the above calculations show at least **$12,058,789.35 in controversy**, which is more than sufficient to support the required $5 million amount in controversy threshold.

48. Nonetheless, Plaintiff also alleges under her First Cause of Action that "[a]t all relevant times herein mentioned, Defendants knowingly failed to pay to Plaintiff and the Class compensation for all hours they worked," which resulted in Defendant failing to pay minimum and straight time wages. FAC ¶¶ 33-36.

49. Plaintiff also alleges under her Second Cause of Action that "Plaintiff and the Class are regularly required to work overtime hours" and "[a]t all times relevant hereto, Defendants failed to pay Plaintiff and the Class overtime compensation for the hours they have worked in excess of the maximum hours permissible by law as required by California Labor Code § 510 and 1198. Plaintiff and the Class are regularly required to work overtime hours." FAC ¶ 45. Additionally, "Defendants' unlawful failure to pay additional premium rate compensation to the Plaintiff and the Class for their overtime hours worked, Plaintiff and the Class have suffered, and will continue to suffer, damages in amounts which are presently unknown to them . . ." FAC ¶ 46.

50. Here, because Plaintiff has not provided any allegations that could be read to reasonably constrain the potential violation rates for unpaid minimum wages, straight time wages, and overtime wages, Defendant could reasonably rely on a violation rate that would put one additional hour of pay for each category of unpaid wages per each of the 865,736 workweeks during the Applicable Period in the amount in controversy. *Perez*, *supra*, at 808; Aniff Decl., ¶ 6, Ex. 5, ¶ 9.

51. Additionally, Plaintiff seeks attorneys' fees and costs for bringing her unpaid wage claims, which would also be included in the amount in controversy for purposes of removal. FAC ¶¶ 40, 48; Prayer for Relief ¶¶ 8, 13; *see Rombaut, supra*, 2025 WL 2044670, at *8-9.

52. Plaintiff also seeks rest break premiums and attorneys' fees and costs on behalf of the proposed class alleging that "Defendants failed to authorize Plaintiff and the Class to take rest breaks, regardless of whether employees worked more than 4 hours in a workday." FAC ¶ 56; Prayer for Relief, ¶¶ 21-23. As such, Defendant could assume one hour of rest period premiums per workweek as part of the amount in controversy, as well. *Perez, supra*, at 808.

53. Additionally, in her Seventh Cause of Action, Plaintiff seeks actual damages, statutory penalties, and attorneys' fees alleging "Defendants have intentionally and willfully failed to provide employees with complete and accurate wage statements." FAC ¶ 71; Prayer for Relief, ¶¶ 36, 38.

54. Further, Plaintiff seeks allegedly unpaid reasonable and necessary business expenses and attorneys' fees and costs pursuant to her Fifth Cause of Action, which further increases the amount placed in controversy. FAC ¶¶ 59-61; Prayer for Relief, ¶¶ 26-28.

55. For purposes of this removal, the addition of the Plaintiff's additional claims would add additional amounts to the **<u>$12,058,789.35 amount in controversy</u>**, which is more than sufficient to support the required $5 million amount in controversy threshold.

## III. <u>THIS NOTICE IS TIMELY</u>

56. The time to remove under 28 U.S.C. section 1446(b)(1) or (3) does not begin to run until receipt by the defendant, through service or otherwise, of a pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

*Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005) ("*Harris*"). In *Harris*, the Ninth Circuit held that defendants have no obligation to investigate or develop additional information as to removability. *Id*. at 694 ("[N]otice of removability under 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry" by the defendant). In *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136 (9th Cir. 2013), the Ninth Circuit reinforced its decision in *Harris* regarding the duty to investigate removability, finding that defendants are not "saddl[ed] with the burden of investigating jurisdictional facts" to ascertain removability. *Kuxhausen*, 707 F.3d at 1139.

57. In *Roth v. CHA Hollywood Med. Ctr.*, L.P., 720 F.3d 1121, 1125 (9th Cir. 2013), the Ninth Circuit affirmed Harris's holding "that a defendant does not have a duty of inquiry if the initial pleading or other document is 'indeterminate' with respect to removability." *Roth* explained that "a defendant who has not lost the right to remove because of a failure to timely file…may remove to federal court when it discovers, based on its own investigation, that a case is removable." *Id*. at 1123. "A CAFA case may be removed at any time, provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered." *Id*. at 1126 (emphasis added). Thus, when the FAC on its own "does not reveal that the case is removable [under CAFA], the 30–day time period never starts to run and the defendant may remove at any time." *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014). Starting the 30-day clock under § 1446(b)(3) is more difficult than under § 1446(b)(1). *Dietrich v. Boeing Company*, 14 F.4th 1089, 1093 (9th Cir. 2021) (recognizing that § 1446(b)(3) "seems to require a greater level of certainty or that the facts supporting removability be stated unequivocally").

58. Courts within this district have consistently rejected arguments that CAFA removals were untimely in situations where the FAC did not affirmatively allege an amount in controversy or attempted to plead around any specific amount in controversy. *See Amezcua v. CRST Expedited Inc.*, 653 F. Supp. 3d 712, 718-19 (N.D. Cal. 2023) (denying remand even though defendant removed more than two years after the initial pleading and nearly one year after the amended pleading in the action); *Hernandez v. Comcast Corp.*, No. C 14-04575 JSW, 2015 WL 13404296, at *3 (N.D. Cal. Jan. 16, 2015) (denying remand and finding removal timely because "the 30-day period was never

triggered because Plaintiff did not allege a clear amount of controversy in any of its complaints”).

59. Other district courts within the Ninth District have ruled similarly. *See e.g., Reyes v. Dollar Tree Stores, Inc.*, 781 F.3d 1185, 1189-90 (9th Cir. 2015) (removal after class certification timely); *Padilla v. APL Logistics Americas Ltd.*, 2024 WL 5057728, at *2 (E.D. Cal., 2024) (denying remand even though defendant removed approximately four months after the filing of the complaint because it did not provide any figures that would enable calculation of an amount in controversy greater than $5 million); *Gutierrez v. Stericycle, Inc.*, No. LA CV15-08187 JAK (JEMx), 2017 WL 599412, at *11-12 (C.D. Cal. Feb. 14, 2017) (finding removal was timely more than a year after the filing of the complaint because the four-corners of the complaint did not trigger a deadline to remove); *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1181 (E.D. Cal., 2020) (concluding removal was timely because the operative complaint did not affirmatively reveal the aggregated amount in controversy); *Taylor v. United Road Services, Inc.*, 313 F. Supp. 3d 1161, 1173 (E.D. Cal., 2018) (concluding removal was timely because complaint was silent as to class members’ alleged damages and defendant did not receive such specificity until plaintiff’s deposition); *Cantley v. Radiancy, Inc.*, No. 1:15-cv-1649-LJO-JLT, 2015 WL 13237073, at *3 (E.D. Cal. Dec. 18, 2015) (removal timely one year after initial pleading).

60. Here, it is evident that Defendant could not derive the $5 million amount-in-controversy (“AIC”) threshold from the “four corners” of Plaintiff’s FAC. The FAC does not assert any specific amount of damages. *See generally* FAC. The same is true for its prayer for relief. FAC; Prayer For Relief. It only alleges that “Plaintiff and the Class suffered, and will continue to suffer, damages in amounts which are presently unknown to Plaintiff and the Class, but which exceed the jurisdictional minimum of this Court, and which will be ascertained according to proof at trial.” FAC ¶ 36. When looking at Plaintiff’s causes of action, Plaintiff and putative class members’ claims for wages, meal and rest period premiums, statutory penalties, interest, damages and restitution do nothing to articulate an amount in controversy nor do they provide information from which it could be derived. Rather they only state in vague terms Plaintiff and the putative class members are entitled to unpaid minimum, straight time, and overtime wages, unpaid meal and rest period premiums, and unreimbursed business expenses “as may be appropriate,” for alleged inaccurate wage statement

penalties, and for unspecified amounts of interest, attorneys' fees and costs, and statutory penalties. *See generally* FAC; Prayer For Relief. Instead, Plaintiff goes through great pains to obscure potential violation rates and the applicability of the allegations of damages by alleging that violations occurred "regularly" and "often," but refers to the allegations as a "systematic, company-wide policy and practice." FAC ¶¶ 5, 16-18, 33, 45, 52. Thus, the AIC for purposes CAFA removal cannot reasonably be derived from this information and the instant removal is timely.

## IV. DEFENDANT HAS SATISFIED THE REMAINING REMOVAL REQUIREMENTS

61. Venue is Proper. In accordance with 28 U.S.C. § 1446, subdivision (a), this Notice of Removal is filed in the District in which the action is pending. The Superior Court of the State of California for the County of San Mateo is located within the Northern District of California. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441, subd. (a).

62. In accordance with 28 U.S.C. § 1446, subdivision (a), copies of all process, pleadings, and orders served upon Defendant are attached as Exhibits to this Notice.

63. In accordance with 28 U.S.C. § 1446, subdivision (d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of San Mateo. Notice of compliance shall be filed promptly afterward with this Court.

64. As required by Federal Rule of Civil Procedure 7.1, Defendant concurrently filed their Certificate of Interested Parties and Disclosure Statement.

65. Finally, in the event this Court has any question regarding the propriety of this Notice of Removal, Defendant requests that the Court issue an Order to Show Cause so that Defendant may have an opportunity to more fully brief the basis for this removal, including with respect to the remaining claims Plaintiff alleged in her FAC.

///

///

///

WHEREFORE, Defendant removes the above-captioned action to the United States District Court for the Northern District of California.

DATED: December 9, 2025

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/Omar M. Aniff*
Elizabeth A. Falcone
Matthew J. Gagnon
Omar M. Aniff
Haik Kolsuzyan

Attorneys for Defendant
KCE CHAMPIONS LLC